**George J. LUDDINGTON,
Plaintiff–Appellant,**

v.

**INDIANA BELL TELEPHONE
COMPANY, Defendant–
Appellee.**

**No. 91–2320.**

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1992.

Decided June 15, 1992.

Rehearing and Rehearing En Banc
Denied Sept. 4, 1992.

John O. Moss (argued), Moss & Walton, Indianapolis, Ind., for plaintiff-appellant.

Gregory J. Utken (argued), Baker & Daniels, Indianapolis, Ind., for defendant-appellee.

Robert E. Williams, Douglas S. McDowell, Heidi K. McAuliffe, McGuiness & Williams, Washington, D.C., for amicus curiae Equal Employment Advisory Council.

Before POSNER and KANNE, Circuit Judges, and BURNS, Senior District Judge.[*]

POSNER, Circuit Judge.

George Luddington has been employed by Indiana Bell since 1966. In 1979 he moved out of the worker ranks and into a bottom-rung management position, where he has been stuck ever since. Between 1982 and 1984 he applied for at least 35 other positions—most higher, some not—with the company. Turned down every time, in 1986 he filed this suit, which charges that every turndown precipitated four distinct statutory violations, for a total of 140, because every one was both an act of racial discrimination and an act of retaliation for complaining about discrimination and each act violated both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, which forbids racial discrimination in employment, and 42 U.S.C. § 1981, which entitles every person to the contractual rights of white persons. The district judge granted summary judgment for the company. While the appeal was awaiting argument, Congress enacted the Civil Rights Act of 1991, P.L. 102–166, which amended both statutes; and at our request the parties have briefed the significance of that enactment to the appeal. Some weeks ago another panel of this court, in agreement with the only other courts of appeals to have decided it, *Vogel v. City of Cincinnati*, 959 F.2d 594, 597–98 (6th Cir.1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992), held that the Act is not to be applied retroactively. *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir. 1992). In view of the importance of the question, we shall discuss it as if it were an open question in this circuit, rather than, as we would ordinarily do, dispose of it with a citation to our recent decision. But we can be brief.

*Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), had interpreted the then section

---

[*] Hon. James M. Burns of the District of Oregon, sitting by designation.

1981 to exclude claims based on a refusal to promote or transfer an employee, unless the promotion or transfer could be said to create a new employment relation. The decision, applied as decisions normally (perhaps, after *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), always) are to pending as well as to new cases, wiped out many of Luddington's claims. The new civil rights act makes section 1981 expressly applicable to all racial discrimination in a contractual relation. 42 U.S.C. § 1981(b). If, as Luddington argues, the new act is retroactive, then some of the charges dismissed by the district judge must be reinstated. Of course, there is retroactivity and there is retroactivity. A statute could be applied (1) to cases filed and completed before the effective date of the statute that arise from acts committed before that effective date, (2) to cases filed before the effective date of the statute, but not completed by that date, that arise from acts committed before that date, (3) to cases filed after the effective date that arise from acts committed before that date, (4) to cases in any of these categories but in which the conduct complained of straddles the effective date of the statute, or (5) only to cases filed after the effective date that arise from acts committed entirely after that date. The first four types of application would be retroactive to varying degrees; the fifth wouldn't be retroactive at all. Luddington's case is in cell (2) (*Mozee* likewise). It was filed, but not completed, before the effective date of the statute and it arises from conduct also committed before that date.

The new act provides, so far as bears on this case, that the amendments made by it "shall take effect upon enactment." This could mean no more than that employers were given no grace period in which to bring their practices into compliance with the requirements of the act; they must begin to comply, on pain of sanctions if they fail, on the day the act was passed. So interpreted the statute would be prospective. Or the language that we have quoted could mean that the requirements of the act apply to every undecided case— or perhaps to decided cases as well, which losing litigants could reopen to take advantage of the new act. The floor debates on the 1991 act reveal, as one would expect, divergent views on these questions. It seems futile to search for a legislative intent, bearing in mind that the President is by virtue of the veto power a key participant in the legislative process. President Bush would probably have vetoed a statute that contained an express provision for retroactivity—he had done so the previous session and his veto had not been overridden—but the Democratic majority in both houses would equally have "vetoed" an express provision for prospective application. As so often happens, the contenders could not agree, so they dumped the question into the judiciary's lap without guidance.

This politically convenient solution was facilitated by the fact that the courts do not have a consistent rule for deciding whether a statute shall be given retroactive, or merely prospective, effect when the statute does not say. Either of the contending factions in Congress could thus hope that statutory silence would work in its favor. In some cases, notably *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court had announced a presumption that statutes are to be applied retroactively, at least in the sense of being applied to cases pending on the statute's effective date. In other cases it had said the opposite. Justice Scalia examined the two lines of cases in *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 841, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990) (concurring opinion), and pronounced them "in irreconcilable contradiction." We agree. We too have straddled this divide. *Littlefield v. McGuffey,* 954 F.2d 1337, 1345 (7th Cir.1992); *Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730 (7th Cir.1991); *FDIC v. Wright,* 942 F.2d 1089, 1095 and n. 6 (7th Cir.1991); *McKnight v. General Motors Corp.,* 908 F.2d 104, 110–11 (7th Cir.1990).

The idea that the law should confine its prohibitions and regulations to future con-

duct, so that the persons subject to the law can conform their conduct to it and thus avoid being punished, whether criminally or civilly, for conduct that they had no reason to think unlawful, is a component of the traditional conception of the "rule of law." Except as codified in constitutional provisions (retroactive imposition of criminal penalties, for example, is forbidden by the ex post facto clause of the Constitution), the traditional conception is neither immutable nor absolute. But we think that conformity to it is the right policy for courts to follow in default of other guidance.

That brings us part of the way to resolution of the question whether the recent civil rights act should be applied prospectively only, but not all the way, because we are speaking only of a *presumption* against retroactive application. Procedural innovations not likely to bias decision systematically in favor of one litigant rather than his opponent can, without serious affront to the values crystallized in the phrase "rule of law," be applied to cases pending when the innovations were adopted; and that is the norm even in criminal cases. *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Prater v. United States Parole Comm'n*, 802 F.2d 948, 953 (7th Cir.1986) (en banc). In civil cases, the presumption against retroactive substantive lawmaking is actually reversed when the newly promulgated "law" is a judicial decision, whether overruling a previous decision or otherwise changing the settled course of the law. *Chowaniec v. Arlington Park Race Track, Ltd.*, 934 F.2d 128, 131–32 (7th Cir.1991); *NLRB v. Bufco Corp.*, 899 F.2d 608, 611–12 (7th Cir.1990); *Agfa–Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1524 (7th Cir.1989); *EEOC v. Vucitech*, 842 F.2d 936, 941 (7th Cir.1988); *In re Resolution Trust Co.*, 888 F.2d 57, 58 (8th Cir.1989). In reliance on this presumption—which the Supreme Court's recent decision in *Beam* may, as we noted, have rendered irrebuttable, although the absence of a majority opinion makes it more than usually difficult to construct the Court's holding—we held in *McKnight v. General Motors Corp., supra*, 908 F.2d at 107, that *Patterson* should be applied retro-

actively. This result rested not on the fiction that judges find rather than make law but on such practical reasons as that otherwise litigants might lack adequate incentives to seek legal change through the courts and courts might feel too free to make such changes, because the costs in disturbance of expectations would be minimized by prospective application. Moreover, the power of a court to redistribute wealth and otherwise disturb settled expectations is held in check by the judicial tradition of incremental change and by the limited control that judges exercise over taxing and spending. A legislature has awesome power uncabined by a professional tradition of modesty and this power is held a little in check by the presumption that its handiwork is to be applied only to future conduct.

We might regard this as an exceptional case by pointing out that just as *Patterson* overruled or at least qualified the decisions that had created the legal regime under which Luddington brought this suit back in 1986, so the 1991 civil rights statute "overruled" *Patterson* and several other decisions that a majority of the Congress believed had misinterpreted 42 U.S.C. § 1981. And we just said that prospective overruling is the norm. But it would be naive to suppose that Congress sits to review the interpretive soundness of judicial decisions. Congress is not a judicial body, let alone a body of academic commentators on judicial decisions. When it "overrules" a Supreme Court decision it is not registering disagreement with the merits of what the Court did; it is laying down a new rule of conduct—ordinarily for the future. Section 1981 dates back to 1866. It is as unlikely that Congress was attempting to restore section 1981 to the understanding of its framers as that *Patterson* in cutting back the earlier decisions had restored the statute to its original understanding. The new civil rights act reflects contemporary policy and politics, rather than a dispute between Congress and the Supreme Court over the mechanics of interpretation.

If the Civil Rights Act of 1991 made merely technical changes to the statute the

presumption of prospective application would be rebutted. It does more. True, it does not prohibit any conduct not already prohibited by Title VII, except the practice of "race norming" (raising mean test scores of minority applicants to the mean of the majority). 42 U.S.C. § 2000e-2(*l*). It makes changes in remedies, procedures, and evidence. But such changes can have as profound an impact on behavior outside the courtroom as avowedly substantive changes. Before the Act was passed—which is to say in the short-lived regime of the *Patterson* decision—a plaintiff in an employment discrimination case based on race could invoke section 1981 and thus obtain common law damages only if the discrimination took the form of refusal to hire in the first place or, if the plaintiff was already an employee, to promote into a new employment relation (such as associate to partner in a law firm). A discharge, or a refusal to make an ordinary promotion or a lateral transfer, was not covered; a victim of discrimination in these forms was remitted to lesser remedies, those of Title VII. The new statute brings these acts under section 1981 and thus subjects employers to greater liabilities.

It could be argued that since the underlying norm of nondiscrimination was not new, employers should not be heard to complain that the norm has now been given teeth. But many of us would squawk very loudly indeed if people with unpaid parking tickets were made retroactively liable to life imprisonment; and in fact such a change although purely remedial would violate the ex post facto clause. *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 639 (7th Cir. 1990). The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute ap-

plies only to conduct that occurs after its effective date.

▮ All this may seem rather hollow in a case such as this, where the change brought about by the new statute is a change back to the legal regime that existed when the defendant committed the acts for which it is being sued. *Patterson* was decided three years after the last act for which Luddington seeks to hold Indiana Bell liable. Indiana Bell had the same incentive to avoid racial discrimination back then as it does under the Civil Rights Act of 1991. Well, but not quite. The pre-*Patterson* "legal regime" to which we have referred was merely a set of lower-court decisions, constituting a stab in the dark concerning issues on which the Supreme Court had not yet ruled. It was a tentative regime, which *Patterson* swept away. And it would be a considerable paradox to hold that the older the conduct complained of, the more securely the conduct is subject to the new statute. The Civil Rights Act of 1991 would be applied to racial discrimination committed before 1989, as well as to that committed since 1991, but racial discrimination committed between 1989 and 1991 would be subject to the more liberal (from a defendant's standpoint) regime of the *Patterson* decision. A jurisprudence of effective dates for the 1991 statute would be too complex to be worth elaborating and applying, especially when we consider the added costs of litigation that would be imposed. Here for example retroactive application of the 1991 statute would require us to remand a case already in its sixth year that has not been tried. Retroactive application across the board would produce massive dislocations in ongoing litigation and defeat substantial reliance interests of employers. Retroactive application carefully tailored to situations (quite possibly illustrated by this case) in which those reliance interests are minimal would engender enormous satellite litigation and associated uncertainty to fix an indistinct boundary. We hold that the new act is applicable only to conduct engaged in after the effective dates (plural because several sections carry different effective dates) in the act, at least

if the suit had been brought before the effective date.

That knocks out many of Luddington's section 1981 claims but leaves all his Title VII claims unaffected. Indiana Bell, citing cases which hold that skeletal or perfunctory arguments do not preserve issues for appellate review, asks us not to reach the merits of those claims. It points out, in support of its request, that Luddington's brief does not specify which of the 140 claims presented to the district court he wants us to review, that the questions presented in his brief do not correspond to the questions actually argued in the brief, that the brief quotes a passage about civil rights which does not appear in the toxic-waste case that the brief cites as its source for the passage, and that the statement of facts contains virtually no references to the record.

■■■ Luddington filed a reply brief, but it contains no reply whatsoever to Indiana Bell's argument that his opening brief failed to preserve his claims for review by this court. Although we could search through the summary judgment record—examine carefully all 140 claims, or 84 claims (4 $\times$ (35 − 14)), or some lesser number—and see whether we thought that any of them might have some merit that the district judge had overlooked, if we did this we would be stepping outside the proper judicial role in an adversarial system. This court is not equipped to act as auxiliary lawyer for a party to an appeal. The responsibility for the identification, framing, and argument of the issues on appeal is that of the lawyers, not that of the judges. If we assume the lawyers' responsibilities, we unbalance the market for legal services and take time away from our consideration and decision of other cases. So, if an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation. *In re James Wilson Associates*, 965 F.2d 160, 170 (7th Cir.1992); *United States v. Har-*

*vey*, 959 F.2d 1371, 1376 (7th Cir.1992); *Petrulis v. Commissioner*, 938 F.2d 78, 81 (7th Cir.1991); *Hanrahan v. Thieret*, 933 F.2d 1328, 1335 ·n. 13 (7th Cir.1991); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)· (per curiam); *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 536 (7th Cir.1991); *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir.1990)· At least this is true in ·civil cases, where there is no constitutional or other legal right to competent representation.· We add, should anyone think us too quick to sacrifice substantive justice on the altar of administrative convenience and other bloodless institutional considerations, that a quick perusal of the record has ·brought to light no indications that the district judge committed any errors.

AFFIRMED.