**Charles HOLT, Plaintiff–Appellant,**

v.

**MICHIGAN DEPARTMENT OF CORRECTIONS, MICHIGAN STATE INDUSTRIES, Defendant–Appellee.**

**No. 91–2034.**

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 13, 1992.

Decided Sept. 11, 1992.

Charles J. Holt (briefed), Grand Rapids, Mich., for plaintiff-appellant.

Gary P. Gordon, Asst. Atty. Gen. (briefed), Todd B. Adams, Office of Atty. Gen., Lansing, Mich., for defendant-appellee.

Before: MERRITT, Chief Judge, MILBURN and GUY, Circuit Judges.

MERRITT, Chief Judge.

The plaintiff, Charles Holt, appeals the district court's summary judgment in favor of the defendants in this employment discrimination action brought under 42 U.S.C. § 1981. For the reasons that follow, we affirm.

## I.

Holt, a civil service employee, is employed by Michigan State Industries, a bureau of the Michigan Department of Corrections. Michigan State Industries operates about 39 factories in Michigan prisons. The factories produce a variety of goods, from furniture to clothing. Holt was hired by Michigan State Industries in 1985. He began as a level V supervisor in the shoe factory at the State Prison of Southern Michigan, where he supervised prisoners who worked in the factory. He has been transferred twice to different factories in different prisons. Currently, Holt works as a production supervisor at the Cotton Garment Factory in the Carson City facility. Holt remains a level V supervisor. In the years between 1982 and 1989 Holt sought, but was denied, promotions to higher level supervisory positions. Promotion to a level VI supervisor, for example, would enable Holt to supervise not just prisoners, but also non-prisoners in the company's factories.

Eschewing state remedies, Holt filed a § 1981 action in federal district court. In his *pro se* complaint, Holt, an African-American, contends that he was unilaterally transferred and demoted from different jobs, denied access to skilled and semiskilled training, prevented from exercising his seniority, and refused promotion to higher level supervisory jobs on account of his race. He claims that Michigan State Industries "engages in a pattern and practice of racial discrimination" in job placement and training. In support of his complaint, Holt alleges that the vast majority of salaried African-American employees at Michigan State Industries are concentrated in low level jobs and, unlike their white counterparts, are given little opportunity for advancement.[1] With respect to his failure-to-promote claim, Holt seeks monetary damages and injunctive relief. The defendants contend that Holt "has never been promoted because he has not been the most qualified person for the open job."

The district court dismissed the portions of Holt's complaint seeking monetary relief. The court held that the Eleventh Amendment barred Holt from suing his own state in a federal court for damages. The district court granted summary judgment for the defendants on those claims for which Holt sought injunctive relief. 771 F.Supp. 201. The court relied on *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), *overruled by* Civil Rights Act of 1991, P.L. 102–166. In *Patterson*, the Supreme Court held that an employee's claim of racial harassment relating to the conditions of employment is not actionable under § 1981 because the provision does not apply to conduct which occurs after formation of a contract and which does not interfere with the right to enforce established contract obligations. The court found that Holt's allegations involved post-formation conduct on the part of his employer. Holt, proceeding *pro se*, appeals the summary judgment dismissal of his claims.

## II.

Because Congress overturned *Patterson* after the district court decided this case, we must first determine whether the Civil Rights Act of 1991 applies retroactively. We hold that the Civil Rights Act of 1991

---

1. Michigan State Industries admits that there are no African-American employees in its Personnel Department, Sales Department, and Warehouse, and that there are no African-American sales managers or level VI supervisors. The defendants, however, note that the director of Michigan's Department of Corrections is African-American.

does not apply retroactively, that *Patterson* controls this case, and that *Patterson* precludes the plaintiff's claims. We need not reach the Eleventh Amendment question briefed by both parties.

## A. Nonretroactivity of the Civil Rights Act of 1991

■ 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Under the short-lived *Patterson* regime, § 1981 protected only the right to make employment contracts and the right to enforce such contracts through the courts. The *Patterson* Court held that § 1981 does not apply to discrimination in the conditions of employment. Thus, under *Patterson*, an employer's racially discriminatory conduct occurring after the formation of the employment contract is not actionable under § 1981. The Court, however, recognized that a failure-to-promote claim may be actionable under § 1981, but "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." 491 U.S. at 185–86, 109 S.Ct. at 2377.

The Civil Rights Act of 1991 overruled the *Patterson* decision. The defendants acknowledge that the Act greatly expands the coverage of § 1981 and "arguably include[s] situations like that in the instant matter that occur after the effective date of the act." Brief of Appellee at 11. In other words, were Holt to file a claim tomorrow alleging discriminatory conduct by Michigan State Industries occurring *after* November 21, 1991—the effective date of the Act—his claim would be viable under § 1981. In this case, however, the employer's alleged conduct occurred prior to the Act. The defendants thus argue that the Civil Rights Act should not be applied retroactively.

Sixth Circuit precedent supports the defendants' contention. In *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992), this Circuit held that the Civil Rights Act of 1991 does not apply retroactively to conduct that occurred before the Act became law. *Id.* at 597–89. The Fifth, Seventh and Eighth Circuits have followed suit. *See Johnson v. Uncle Ben's Inc.*, 965 F.2d 1363 (5th Cir.1992); *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992). *See also Fray*, app. at 1383 (listing district courts refusing to apply Act retroactively).

Several courts have discussed why the Civil Rights Act of 1991 should not apply to claims arising before and during *Patterson's* reign. The courts' reasoning can be summarized as follows. Courts must first look to the statute itself to determine whether Congress, through the statute, spoke to the issue of retroactivity. "[W]here the congressional intent is clear, it governs." *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). The Act in question is silent on this matter. If the statute's language is unhelpful, then courts must try to discern congressional intent by looking to the statute's legislative history. The legislative history of the Act reveals that Congressional Democrats and Republicans could not agree on whether the Act should be applied retroactively or merely prospectively. As a result, Congress "dumped the question in the the judiciary's lap without guidance." *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 227 (7th Cir.1992).

Added to this Congressional indecision is judicial inconsistency over whether a statute should be given retroactive or prospective effect in the absence of clear congressional intent. *Compare Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (courts are to apply the law in effect at the time a court renders its decision unless such application results in manifest injustice or runs

contrary to congressional intent) *with Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (statute does not apply retroactively unless its language requires it.) *See generally Kaiser,* 494 U.S. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring) (examining the two lines of retroactivity cases and pronouncing those two lines "in irreconcilable contradiction.").

Against this unfortunate background, Judge Posner of the Seventh Circuit offers a sound explanation why the Civil Rights Act of 1991 should not apply retroactively.

> The idea that the law should confine its prohibitions and regulations to future conduct, so that the persons subject to the law can conform their conduct to it and thus avoid being punished, whether criminally or civilly, for conduct that they had no reason to think unlawful, is a component of the traditional conception of the "rule of law." Except as codified in constitutional provisions ... the traditional conception is neither immutable nor absolute. But we think that conformity to it is the right policy for courts to follow in default of other guidance.

*Luddington* at 227–28. This Circuit follows a rule consistent with Judge Posner's reasoning and conclusion. Because the conduct complained of by Holt occurred prior to the promulgation of the Civil Rights Act of 1991, we apply *Patterson* to the facts of this case.

### B.  Patterson's *Failure-to-Promote Exception*

■ *Patterson* precludes an action under § 1981 relating to the conditions of employment unless the claim involves a discriminatory failure-to-promote where the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. In the language of *Patterson,* a failure-to-promote claim is actionable under § 1981 only where the promotion rises "to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377. This case does not fit *Patterson's* failure-to-promote exception.

The district court found that Holt's desired promotions would involve simply more responsibility for the production of goods manufactured by Michigan State Industries and, presumably, increased pay and benefits. The district court held, therefore, that the desired promotions did not rise "to the level of an opportunity for a new and distinct relation between the employee and the employer." *See Patterson,* 491 U.S. at 185–86, 109 S.Ct. at 2377. The district court contrasted Holt's situation with that of the employee in *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), a case cited by the *Patterson* court (with a *"Cf."* signal) in conjunction with its discussion of the "a new and distinct relation" standard. In *Hishon,* a Title VII case, a law firm refused to promote an associate attorney, a woman, to the position of partner. Apparently, the Court's reference to *Hishon* indicates that, in the Court's view, an employer's failure to promote an employee from law firm associate to partner constitutes a "new and distinct" employment relation actionable under § 1981.

The defendants acknowledge that some district courts in the Sixth Circuit have construed *Patterson's* "new and distinct relation" standard "fairly broadly." Brief of Appellee at 15. That is to say, some courts have viewed *Hishon's* facts to fall somewhere in the middle of a continuum of employment scenarios that give rise to "new and distinct" employment relations.

To be sure, *Patterson's* "new and distinct relation" standard admits of no simple, bright-line test. A review of cases interpreting *Patterson* discloses that courts have had to undertake subtle, sometimes hairsplitting analyses to determine whether a change in employment constitutes a "new and distinct relation." The case at hand, however, is not so taxing. Holt seeks to move from one supervisory position (level V) to another (level VI). Though such a move brings with it increased responsibilities—for example, overseeing non-prisoner workers—and a potential pay increase, such a move constitutes an incremental change in employment of

the type nearly all courts have found insufficient to establish a claim under *Patterson.* Holt's sought-after promotion differs in degree and kind from a promotion from a non-supervisory to a supervisory post, or a change from an hourly wage or commission-based salary to a weekly or annual salary—employment scenarios most courts have deemed actionable under *Patterson. See generally Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188 (7th Cir. 1992). While the facts of *Hishon* do not define the entire scope of *Patterson's* "new and distinct" relation standard, we decline to extend that standard to encompass the facts of this case.

Accordingly, we hold that Holt's desired promotion, standing alone, would not constitute a "new and distinct relation" between employee and employer within the meaning of *Patterson.* Holt's complaint, in other words, does not establish a failure-to-promote claim under § 1981. We therefore affirm the district court's summary judgment because no genuine issue of material exists and the defendants are entitled to judgment as a matter of law. *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir. 1988).

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.