**UNITED STATES of America, Plaintiff,**

v.

**Robert R. STOCKER and Stocker Clinic, S.C., Defendants.**

**No. 90–C–154.**

United States District Court, E.D. Wisconsin.

Aug. 4, 1992.

As Corrected Oct. 13, 1992.

Joseph R. Wall, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Gerald P. Boyle, Milwaukee, Wis., for defendants.

## ORDER

WARREN, Senior District Judge.

## I. INTRODUCTION

On February 13, 1990, the United States filed a 28 count civil action alleging that from February 14, 1984 through February 4, 1985, the defendants made, or caused to be made, false claims to the United States Department of Health and Human Services. On December 16, 1991, the United States filed a motion for summary judgment on all 28 counts in its Complaint. On June 8, 1992, this Court granted the government's motion for summary judgment as to defendants' liability on all 28 claims. However, at the government's request, this Court withheld a finding as to damages so as to allow further briefing with respect to whether the 1986 amendments to the False Claims Act retroactively apply to this case. Because the parties have completed their briefing, the Court will now address this issue.

## II. DISCUSSION

When addressing the issue of prospective versus retroactive application, courts first look to Congress's intent. When congressional intent is clear, this intent controls. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 838, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). Unfortunately, an examination of the legislative history of the 1986 amendments to the False Claims Act provides little help. For this reason, the government cites no express congressional language suggesting retroactivity. Defendants, on the other hand, merely cite a letter from the director of the Congressional Budget Office to the Chairman of the Judiciary Committee. This letter states in part: "Because the provisions of the bill would apply only to claims made subsequent to enactment, no revenues will be realized until 1989 or 1990." S.Rep. No. 99–345, 99th Cong., 2nd Sess. 6, U.S.Code Cong. & Admin.News 1986, pp. 5266, 5271. The director's statement says nothing about whether the act applies to claims, such as those in this case, which accrued before enactment but which were sued upon after passage of the amendments. *See Luddington v. Indiana Bell Telephone Company*, 966 F.2d 225 (7th Cir. 1992) (here, Judge Posner lists four possible types of retroactive application). Moreover, because defendants' recited statement is merely that of a bureaucrat, it does

not necessarily comport with the intent of Congress.

The lack of clear congressional direction requires this Court to look to the Supreme Court and Seventh Circuit case law to determine whether the amendments should be prospectively or retroactively applied. Unfortunately, the Supreme Court's and the Seventh Circuit's inability to provide clear direction with respect to retroactivity makes this Court's task a difficult one.

In *Mozee v. American Commercial Marine Service Company,* a case addressing the 1991 amendments to 42 U.S.C. § 1981, the Seventh Circuit outlined the conflicting and confusing case law created by the Supreme Court on the issue of retroactivity. 963 F.2d 929 (7th Cir.1992).

The Supreme Court, until its 1968 decision in *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268 [89 S.Ct. 518, 21 L.Ed.2d 474] (1968), followed the general presumption that statutes were to apply prospectively unless the statute expressly provided otherwise. However, in *Thorpe* the Supreme Court stated that the presumption runs the other way. The *Thorpe* decision reached this conclusion without discussing its deviation from a long line of precedent. Then in 1974, the Supreme Court reaffirmed and, possibly, expanded *Thorpe* in *Bradley v. School Board,* 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974). In *Bradley* the Supreme Court stated that the general rule requires courts who are faced with new statutory provisions to apply the law at the time of the decision. Accordingly, *Bradley* retroactively applied a newly enacted statute regarding attorney fees.

*Bradley,* however, is not the Supreme Court's last statement on this issue. Instead, the Court has rendered numerous decisions since *Bradley,* some of which seem to rely on the *Thorpe–Bradley* presumption that statutes apply retroactively to pending cases and some of which state and rely on the historical presumption that statutes apply prospectively unless the statute expressly provides otherwise. Below are a few examples of the Supreme Court's varied post-*Bradley* opinions.

In *United States v. Security Industrial Bank,* 459 U.S. 70 [103 S.Ct. 407, 74 L.Ed.2d 235] (1982), the Court stated, "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." Then three years later in *Bennett v. New Jersey,* 470 U.S. 632 [105 S.Ct. 1555, 84 L.Ed.2d 572] (1985), the Supreme Court based its analysis on the *Thorpe–Bradley* presumption of retroactive application, but then went on to hold that the facts in that case were excepted from the *Thorpe–Bradley* rule. Then in 1988 the Supreme Court again shifted gears in *Bowen v. Georgetown University Hospital,* 488 U.S. 204 [109 S.Ct. 468, 102 L.Ed.2d 493] (1988). In *Bowen* the Supreme Court used strong language indicating that courts should generally presume that statutes apply prospectively: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. Then in 1989 in *National Treasury Employees Union v. Von Raab,* 489 U.S. 656 [109 S.Ct. 1384, 103 L.Ed.2d 685] (1989), the Supreme Court made a passing reference to *Thorpe* because *Thorpe* offered legal support for the parties' concession that newly enacted regulations applied in that case.

*Mozee,* 963 F.2d at 934 (citations omitted). After winding through this conflicting maze of opinions, the *Mozee* court concluded that "the Supreme Court has left us with two seemingly contradictory lines of cases." *See id.* at 935.

Because of the Supreme Court's ruling that "it is not within the province of the court of appeals to determine when the Supreme Court decisions in one line of cases effectively overrules Supreme Court decisions in another line of cases," the *Mozee* court was "left with the difficult task of reconciling the *Thorpe–Bradley* and *Bowen* line of cases in a manner that comports with the policies underlying the need for prospective versus retroactive application."

*Mozee,* 963 F.2d at 935. Facing this quandary, the *Mozee* court tried to reconcile the two lines of cases by determining which line "embodies the general rule of construction and which ... has more limited applicability." *Id.* at 935. The *Mozee* court assumed that, because the "presumption of prospective application is a historical rule construction" and because "the *Bowen* decision contains strong language reaffirming this historical rule of construction," *Bowen* states the general rule. *Id.* at 935–36. The Court then reasoned that the general rule applies at least to the extent that "statutory provisions impacting substantive rights and obligations will not be retroactively applied." *See id.* at 936 (citing *Bennett*). The *Mozee* court noted that this holding meets one of the policies of prospective application, "that it is unfair to hold private parties accountable for rules which were not in effect at the time in which the parties' relevant conduct took place." *See id.* (citing *Bonjorno,* 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring)).

The *Mozee* court later raised the question, important to this litigation, of whether the general presumption of prospective application also applies to damage provisions. *See id.* at 939. In addressing this issue, the *Mozee* court first stated:

[T]he policy [favoring prospective application] is not implicated when applying the damage provisions in effect at the time in which proceedings are initiated. Granted, the greater an award of damages for proscribed, unwanted conduct, the less likely that persons and entities will perform this unwanted conduct. Nonetheless, the traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. *See* Dan B. Dobbs, Remedies § 3.1 (1973). Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating

parties to comply with the more recent statutory changes with regard to damages.

*Mozee* at 939.

The *Mozee* court then, however, appears to have backtracked somewhat, stating that "[f]or the above reasons, it is *arguable* that courts should apply the ... damage provisions in effect at the time of trial." *See id.* at 939 (emphasis in the original) (citations omitted). The *Mozee* court then further muddied the water, stating:

Nevertheless, considering that *Bowen* is the general rule of construction, there is a flip side to the argument that courts should apply the ... damage provisions in effect at the beginning of proceedings. In short, it may cause undue confusion to require a trial court to conduct a provision-by-provision analysis of an act in order to distinguish between those provisions regulating ... damages and those provisions that affect substantive rights and obligations. In fact, the Court of Appeals for the Sixth Circuit's decision in *Vogel* apparently stands for the proposition that because some of the 1991 Act's provisions affect substantive rights, the entire Act should be prospectively applied. *Vogel* [*v. City of Cincinnati*], 959 F.2d [594] 597 [(6th Cir.1992)]. This position is not without merit.

*Mozee* at 940.

This Court, however, finds that *Mozee's* alternative analysis only applies to cases where a suit has been brought before the effective date of the act in question.[1] This was the situation in *Mozee* and is the reason for the language at the end of the first sentence of *Mozee's* alternative analysis ("that courts should apply the procedural and damage provisions *in effect at the beginning of proceedings*").

■■■ Because *Mozee's* alternative analysis only applies to cases brought before the enactment of the relevant act, this Court finds that *Mozee's* first analysis, that damages provisions apply retroactively, is

---

1. In *Luddington v. Indiana Bell Tel. Co.,* the Seventh Circuit answered the question left open by *Mozee's* alternative analysis. 966 F.2d 225 (7th Cir.1992). The *Luddington* court adhered to *Mozee's* alternative analysis and held that all provisions of the 1991 amendments to 42 U.S.C. § 1981 apply prospectively only, at least in suits which have been brought before the Act's effective date. *See Luddington* at 229–30.

the law in this circuit. This Court notes, however, that the Seventh Circuit more recently, in *Luddington,* stated that the changes in § 1981 which subjected employers to greater liabilities should be treated as substantive changes and therefore applied prospectively only. In support of this conclusion, Judge Posner provided the following insight:

> It could be argued that since the underlying norm of nondiscrimination was not new, employers should not be heard to complain that the norm has now been given teeth. But many of us would squawk very loudly indeed if people with unpaid parking tickets were made retroactively liable to life imprisonment; and in fact such a change although purely remedial would violate the ex post facto clause. *Miller v. Florida,* 482 U.S. 423 [107 S.Ct. 2446, 96 L.Ed.2d 351] (1987); *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 639 (7th Cir.1990). The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

*Luddington* at 229. This Court concurs with Judge Posner's reasoning that in cases such as this, where an amendment dramatically changes the amount of liability, *ex post facto* policy concerns arise. However, this Court also notes that the changes to § 1981 which exposed employers to greater liabilities were substantive

ones, creating liability where it originally did not exist under the act.[2] In contrast, the changes to the False Claims Act which this Court is now addressing merely addressed the amount of damages in question and do not concern the substantive provisions of the law.

This Court also notes that the provisions of the False Claims Act which are addressed today are primarily remedial and not punitive in nature. *See United States v. Bornstein,* 423 U.S. 303, 315, 96 S.Ct. 523, 530–31, 46 L.Ed.2d 514 (1976). ("Double damages are necessary to compensate the government completely for the costs, delays, and inconveniences occasioned by fraudulent claims"). Moreover, this Court notes that even if the damages provisions of the Fraudulent Claims Act have some penal element, the Seventh Circuit has held that changes in punitive damages may be applied retroactively. *See Littlefield v. McGuffey,* 954 F.2d 1337, 1345 (7th Cir. 1992); *see also Mozee* at 939–40, n. 6 ("[g]ranted, punitive damages provisions, which are aimed at deterring future conduct, arguably impact substantive rights. Nevertheless, a change in the amount of recoverable punitive damages is arguably different than the enactment of a statute which initially provides for punitive damages").

■ Having determined that the damages aspect of the 1986 amendments to the Fraudulent Claims Act should be applied retroactively to this case, this Court now must determine the appropriate award of damages in this case. At present, 31 U.S.C. § 3729 provides for a civil penalty of $5,000 to $10,000 on each false claim, plus three times the actual damages sustained by the government.[3] This Court will

---

**2.** Before the passage of the § 1981 amendments, similar relief was available under Title VII. However, Title VII is separate from § 1981, and therefore the new forms of relief available under the 1991 amendments to § 1981 constitute substantive changes to the act.

**3.** The present version of 31 U.S.C. § 3729(a) provides in part:

§ 3729. **False claims**

Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ...

Prior to October 27, 1986, § 3729 provided in part:

536

award civil penalties of only $5,000 for each false claim since this award should easily meet the government's "costs, delays, and inconveniences occasioned by [the] fraudulent claims" in this case. *See Bornstein*, 423 U.S. at 315, 96 S.Ct. at 531. In addition, since the government's 28 claims total $13,964.00, this Court will award treble damages in the amount of $41,892.00.

### III. SUMMARY

Under the foregoing reasoning, this Court DETERMINES that the relevant portions of the 1986 amendments to the Fraudulent Claims Act apply retroactively in this case. Pursuant to the above determination, this Court ORDERS the Clerk of Court to issue a judgment granting the United States of America civil penalties in the amount of $140,000.00 and damages in the amount of $41,892.00.

SO ORDERED.

A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action if the person—

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval ...