**Peggy M. SPICER, Plaintiff,**

v.

**COMMONWEALTH OF VIRGINIA, et al., Defendants.**

**Civ. A. No. 3:92CV611.**

United States District Court, E.D. Virginia, Richmond Division.

Jan. 25, 1993.

Robert James Wagner, Richmond, VA, Frederick A. Douglas, Natalie O. Ludaway,

Leftwich, Moore & Douglas, Washington, DC, for plaintiff.

Guy Winston Horsley, Jr., Office of the Atty. Gen., Richmond, VA, for defendants.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on defendants' motion to strike, in part, plaintiff's demand for jury trial and damages.

For the reasons discussed below, defendant's motion will be GRANTED with respect to plaintiff's demand for jury trial and compensatory and punitive damages for Title VII claims arising from alleged conduct of defendants prior to November 21, 1991.

## I.

Plaintiff Peggy M. Spicer is a female employee at the Buckingham Correctional Center in Dillwyn, Virginia, where she serves as a rehabilitation counselor. Defendant David Smith is the warden at Buckingham and defendant J.M. Perutelli is a watch commander there. Defendant Edward W. Murray is the director of the Virginia Department of Corrections.

Ms. Spicer's first Title VII claim arises from a memorandum issued by defendants Smith and Perutelli on August 1, 1991, and distributed throughout the correctional center. That memorandum stated, in part:

Numerous security staff have received complaints from inmates complaining that female staff are allowed to enter the institution in clothing that their visitors would not be allowed to wear. Some specific examples include Ms. McCoy wearing culottes; Ms. Spicer wearing short dresses with a split in the back and blouses that are so revealing that you can see her breast nipples outlined in plain view; Ms. Gillespie wearing see thru clothing; Ms. Johnson (intern) wearing low cut blouses; Ms. Loukx wearing see thru pants; Ms.

Dixon wearing culottes/mini skirt and Ms. Boggs wearing a sleeveless shirt.

Ms. Spicer alleges that, as a result of the memorandum, she was subjected to unwanted stares and inappropriate comments of a sexual nature.

On November 14, 1991, Ms. Spicer filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. Allegedly in retaliation for that action, defendant Smith removed Ms. Spicer from her post on the Institution Work Committee on December 5, 1991. This allegation of retaliation provides the basis for a second distinct Title VII claim, which is not at issue here.

Plaintiff alleges that defendants' conduct created an abusive work environment, resulting in depression, humiliation, embarrassment and emotional distress. In her complaint, plaintiff asks that "the appropriate compensatory and punitive damages be awarded to Plaintiff and against Defendants," and states that "[t]rial by jury is demanded on all issues."

## II.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, forbids discrimination in employment on the basis of sex. Prior to the November 21, 1991, enactment of the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (1991), however, jury trials and compensatory and punitive damages were not available in Title VII actions.

Ms. Spicer's complaint, filed on September 23, 1992, includes a Title VII claim arising from a memorandum issued on August 1, 1991—more than three months before President Bush signed the 1991 Act into law. Thus, although her Title VII claim was filed after the effective date of the Act, it is based upon conduct that occurred before the Act took effect. Unless this Court determines that the jury trial and damages provisions contained in Section 102 of the 1991 Act[1]

---

1. Section 102 states, in pertinent part:
   (a) Right of Recovery.—
   (1) Civil rights.—In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 20003-5) against a respondent who engaged in unlaw-

   ful intentional discrimination ... prohibited under section 703, 704, or 717 of the Act ..., the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized

should be applied retroactively to such a Title VII claim, plaintiff's demand for jury trial and punitive and compensatory damages must be stricken insofar as they relate to that claim.

### III.

Consideration of whether a federal statute must be applied retroactively is complicated by the existence of two divergent lines of cases, based on two distinct, irreconcilable Supreme Court decisions.

In *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court declared that "a court is to apply the law in effect at the time it renders its decision." *Id.* at 711, 94 S.Ct. at 2016. Under *Bradley,* this presumption of retroactivity applies unless retroactive application of a statute would work a manifest injustice on one of the parties, or unless the statute's language or legislative history indicates a contrary congressional intent. *Id.*

Fourteen years later, however, the Court took an opposite tack in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In *Bowen,* the Court noted that "[r]etroactivity is not favored in the law," and concluded that "congressional enactments and administrative rules will *not* be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471 (emphasis added).

The Court recognized the tension between the two lines of cases in *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), but declined to reconcile or choose between the two approaches.

The Fourth Circuit, in its most recent opinion discussing retroactivity, appeared to favor the *Bowen* approach. In *Leland v. Federal Insurance Administrator,* 934 F.2d 524 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991), the

Fourth Circuit cited *Bowen* in stating the "fundamental and well-established principle of law ... that statutes are presumed to operate prospectively unless retroactive application appears from the plain language of the legislation." *Id.* at 527–28. In contrast to the Fourth Circuit's rather extensive discussion of *Bowen,* mention of *Bradley* was relegated to a footnote. *Id.* at 528 n. 7.

This Court need not choose between the approaches, however, because it finds that under either *Bradley* or *Bowen,* Section 102 of the 1991 Act should not be retroactively applied in this case.

### IV.

The retroactivity of the 1991 Act is a topic which has received much consideration in the federal courts in the relatively short time since the Act was signed into law. Although no circuit court has yet addressed a case involving the precise procedural posture at issue here,[2] several have discussed the applicability of Section 102 to pre-Act conduct.

With but one exception, the circuits have agreed that neither the language of the 1991 Act nor its legislative history provides the courts with guidance as to the question of retroactivity. While Section 402(a) of the Act states that, "[e]xcept as otherwise specifically provided, this Act ... shall take effect upon enactment," it is not clear whether the date of enactment should be viewed as the date upon which the law's provisions begin to operate in all cases, or as the date after which a party may expect his conduct to be subject to the law's provisions. *See, e.g., Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 227 (7th Cir.1992); *Vogel v. City of Cincinnati,* 959 F.2d 594, 597–98 (6th Cir. 1992); *Jaekel v. Equifax Mktg. Decision Sys., Inc.,* 797 F.Supp. 486, 489 (E.D.Va. 1992); *cf. Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370, 1373 (11th Cir.1992); *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1372–73 (5th Cir.1992); *Fray v. Oklahoma World Herald Co.,* 960 F.2d 1370, 1376 (8th

---

by section 706(g) of the Civil Rights Act of 1964, from the respondent....

(c) Jury Trial.—If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury....

**2.** I.e., a Title VII claim filed after the 1991 Act became law, but based upon conduct that occurred prior to its enactment.

Cir.1992); *but see Davis v. City & County of San Francisco,* 976 F.2d 1536 (9th Cir.1992). The legislative history is similarly equivocal, revealing only that the president and a divided Congress could not agree on the issue of retroactivity and therefore "dumped the question into the judiciary's lap without guidance." *Luddington,* 966 F.2d at 227.

Applying the *Bowen* presumption against retroactivity, the absence of statutory language mandating retroactive application of the 1991 Act is sufficient to require this Court to apply the Act prospectively only. *See Bowen,* 488 U.S. at 208, 109 S.Ct. at 471; *Leland,* 934 F.2d at 527–28. If *Bradley* is applied, however, the absence of controlling statutory language or clear guidance in the legislative history would not mandate a particular outcome, but would merely serve to eliminate one of the two exceptions to *Bradley*'s presumption of retroactivity.

Even if this Court were to follow *Bradley* in this case, however, the second exception to its rule—"manifest injustice" that would result from retroactive application—requires that Section 102 be applied prospectively only. As the Fifth Circuit stated in *Landgraf v. USI Film Products,* 968 F.2d 427 (5th Cir.1992):

> Retroactive application of [the 1991 Act's provisions for compensatory and punitive damages] would result in a manifest injustice. The addition of compensatory and punitive damages to the remedies available to a prevailing Title VII plaintiff does not change the scope of the statute's coverage. That does not mean, however, that these are inconsequential changes in the Act. As Judge Posner notes in *Luddington,* "such changes can have as profound an impact on behavior outside the courtroom as avowedly substantive changes." Unlike

allowing prevailing plaintiffs to recover attorney's fees as in *Bradley,* the amended damage provisions of the Act are a seachange in employer liability for Title VII violations. . . .

> The measure of manifest injustice under *Bradley* is not controlled by formal labels of substantive or remedial changes. Instead, we focus on the practical effects the amendments have upon the settled expectations of the parties. There is a practical point at which a dramatic change in the remedial consequences of a rule works change in the normative reach of the rule itself. It would be an injustice within the meaning of *Bradley* to charge individual employers with anticipating this change in damages under Title VII. Unlike *Bradley,* where the statutory change provided only an additional basis for relief already available, compensatory and punitive damages impose "an additional or unforeseeable obligation" contrary to the well-settled law before the amendments.

*Id.* at 433 (quoting *Luddington,* 966 F.2d at 229).[3] This analysis is supported by the Supreme Court's statement in *United States v. Burke,* —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) that "Congress' decision to permit jury trials and compensatory damages under the amended [Civil Rights] act signals a marked change in its conception of the injury redressable by Title VII." *Id.,* —— U.S. at —— n. 12, 112 S.Ct. at 1874 n. 12.

If the punitive and compensatory damage provisions of Section 102 may not be applied retroactively under *Bradley,* the jury trial provision must also be given prospective application only. Under Section 102(c), jury trials are available for Title VII claims only when compensatory or punitive damages are sought. Accordingly, the Court determines

---

**3.** *See also Luddington* itself, which states:

> It could be argued that since the underlying norm of nondiscrimination was not new, employers should not be heard to complain that the norm has now been given teeth. But many of us would squawk very loudly indeed if people with unpaid parking tickets were made retroactively liable to life imprisonment; and in fact such a change although purely remedial would violate the ex post facto clause. [Citations omitted.] The amount of care that individuals and firms take to avoid subjecting

> themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

> *966 F.2d at 229.*

that Ms. Spicer is entitled to neither a jury trial nor compensatory or punitive damages for a Title VII claim based on conduct of defendants prior to November 21, 1991.

## V.

Having concluded that Section 102 of the 1991 Act may not be applied retroactively in this case, the Court notes that the U.S. Equal Employment Opportunity Commission similarly has issued a policy statement that it "will not seek damages under the Civil Rights Act of 1991 for events occurring before November 21, 1991." *See* Policy Guidance on Application of Damages Provisions of the Civil Rights Act of 1991 to Pending Charges and Pre–Act Conduct, EEOC Notice No. 915.002, *reprinted in* EEOC Compl. Man. (CCH) ¶ 2096 (Dec. 27, 1992). Generally, absent clear legislative intent, a reasonable construction given a statute by the agency that administers it is entitled to deference from the courts. *Chevron U.S.A. Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Vogel,* 959 F.2d at 598.

It is also noteworthy that, while their decisions are not binding upon this Court, a majority of district courts faced with this precise situation have declined to apply Section 102 of the 1991 Act retroactively. *See, e.g., Linsalata v. Tri–State Gen. Ins., Ltd.,* No. 92–0596, 1992 WL 392586, 1992 U.S. Dist. LEXIS 19,665 (E.D.Pa. Dec. 17, 1992) (and numerous other cases from that district); *Hangebrauck v. Deloitte & Touche,* No. 92 C 3328, 1992 WL 348743, 1992 U.S. Dist. LEXIS 17,506 (N.D.Ill. Nov. 9, 1992) (and numerous other cases from that district); *Redden v. Wal–Mart Stores, Inc.,* 806 F.Supp. 210 (N.D.Ind.1992); *Moss v. Baker,* No. 92–1604, 1992 WL 329538, 1992 U.S. Dist. LEXIS 16,997 (E.D.La. Nov. 3, 1992) (and numerous other cases from that district); *Scherzer v. Midwest Cellular Tel. Co.,* 797 F.Supp. 914 (D.Kan.1992); *Boss v. Board of Educ., Union Free School Dist. # 6,* 798 F.Supp. 116 (E.D.N.Y.1992); *Crumley v. Delaware State College,* 797 F.Supp. 341 (D.Del. 1992); *but see Jaekel v. Equifax Mktg. Deci-*sion *Sys., Inc.,* 797 F.Supp. 486 (E.D.Va. 1992); *Marrero–Rivera v. Department of Justice,* 800 F.Supp. 1024 (D.P.R.1992).[4]

## VI.

For the reasons set forth above, this Court concludes that Section 102 of the Civil Rights Act of 1991 should not be applied retroactively to a Title VII claim that was filed after the Act became law, but is based upon pre-Act conduct.

Accordingly, defendant's motion to strike is GRANTED with respect to plaintiff's demands for jury trial and for compensatory and punitive damages as to her Title VII claims, insofar as such claims arise from defendants' alleged conduct prior to November 21, 1991. Such demands are hereby ORDERED STRICKEN from plaintiff's complaint.

An appropriate Order will issue.

And it is SO ORDERED.

## *ORDER*

This matter is before the Court on defendants' motion for partial dismissal and to strike, in part, plaintiff's demand for jury trial and damages.

For the reasons stated from the bench, defendant's motion is hereby GRANTED with respect to plaintiff's tort claims against the Commonwealth of Virginia and its agencies, plaintiff's intentional infliction of emotional distress claim, and plaintiff's defamation claim, and such claims are hereby DISMISSED.

For the reasons set forth in the accompanying Memorandum Opinion, defendant's motion is also GRANTED with respect to plaintiff's demand for jury trial and compensatory and punitive damages for Title VII claims arising from alleged conduct of defendants prior to November 21, 1991, and such demands are hereby ORDERED STRICKEN from plaintiff's complaint.

And it is SO ORDERED.

---

**4.** *Great American Tool & Mfg. Co. v. Adolph Coors Co.,* 780 F.Supp. 1354 (D.Colo.1992), a case cited by plaintiff, dealt with the retroactivity of Section 101˙ of the 1991 Act.