**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BUFCO CORP. and Corbett Electric Co., Respondents.**

**No. 89–1876.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1990.

Decided April 4, 1990.

Aileen A. Armstrong, Barbara Sapin, N.L.R.B., Appellate Court—Enforcement Litigation, Washington, D.C., Judith A. Dowd, N.L.R.B., Washington, D.C., William T. Little, N.L.R.B., Region 25, Indianapolis, Ind., for petitioner.

Charles L. Berger, Berger & Berger, Evansville, Ind., for intervenor.

William E. Statham, Statham, Johnson & McCray, Evansville, Ind., for respondents.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

This petition, brought by the National Labor Relations Board (Board) pursuant to Section 10(e) of the National Labor Relations Act, (Act) 29 U.S.C. § 160(e) (1982), seeks enforcement of its order, dated November 30, 1988, finding Bufco Corp. and Corbett Electric Company, Inc. (Company) to be in violation of Section 8(a)(1) and (5) of the Act for repudiating the pre-hire agreements [1] entered into with the Interna-

1. A pre-hire or 8(f) agreement is a contract    agreed to by a union and an employer before

tional Brotherhood of Electrical Workers, Local 16 (Union). Specifically, the Board abandoned its former interpretation of § 8(f) of the Act, 29 U.S.C. § 158(f), which permitted the unilateral repudiation of pre-hire agreements until the union achieved majority support, and retroactively applied to the respondent Company its recent *Deklewa* decision, which prohibits the repudiation of pre-hire agreements until their expiration. *See John Deklewa and Sons, Inc.,* 282 N.L.R.B. No. 184, 124 LRRM 1190 (1987), *enf. sub nom. Intern. Ass'n of Bridge, etc., Local 3 v. NLRB,* 843 F.2d 770 (3rd Cir.1988). The Board accordingly ordered the Company to cease and desist from dishonoring its pre-hire agreements. The Board further ordered the respondent to "make whole" employees covered by the agreements for any losses suffered as a result of their failure to adhere to the agreements until their expiration.

Because we find that the Board's recent *Deklewa* rule is neither contrary to precedent of the Supreme Court nor this court and because we extend the Board deference in fashioning national labor policy, we accept its construction of § 8(f) as articulated in *Deklewa.* Furthermore, because we find no "manifest injustice" in the Board's retroactive application of this rule to the respondent Company, we grant the Board's petition for enforcement of its order.

## I.

Corbett Electric Company is an Indiana Corporation which has been engaged as an electrical contractor in the construction industry for approximately thirty years. Bufco Corp. is basically a shell corporation incorporated in 1970. Both Corporations are closely held by the Corbett family.[2] Since 1963, Corbett has been a member of the Evansville Division, Southern Indiana Chapter, of the National Electrical Contractors Association (NECA). In 1973, Corbett signed two Letters of Assent authorizing NECA to be the collective-bargaining representative of Corbett with authority to bind Corbett to certain bargaining agreements entered into with the Union.

In letters to NECA and the Union dated June 28 and July 2, 1982, respectively, Corbett stated that it was terminating its membership in NECA, severing participation in the multi-employer bargaining group and canceling the letters of assent binding Corbett to bargaining agreements entered into between NECA and the Union. At the time Corbett sent these letters, NECA and the Union were parties to a contract covering residential electrical work effective from October 1, 1981, through September 30, 1983 and a contract covering commercial electrical work effective from June 10, 1982, to March 31, 1985. After sending these letters, Corbett dishonored both contracts by failing to make required dues deductions, contribute to various pension and employee benefit funds, and, in some cases, pay contractual wage rates.

On December 9, 1982 the Union filed unfair labor practice (ULP) charges with the Board against Corbett for repudiating and otherwise failing to comply with the terms of the collective bargaining agreements to which they had previously assented. Following an administrative hearing, the Administrative Law Judge found that by virtue of the conversion and merger doctrines the Union enjoyed majority status under § 9(a) of the Act. 29 U.S.C. § 159(a).[3] This finding of majority status

---

the workers to be covered by the contract have been hired. *Robert's Dictionary of Industrial Relations,* Third Edition 562 (1986). *See also* 29 U.S.C. § 158(f).

**2.** Sometime prior to 1983, the familial and corporate patriarch Bill Corbett transferred ownership of Bufco to his wife and son. Electrical contracting work covered under the NECA agreement was similarly transferred to Bufco. Since the Company does not challenge the Board's conclusion that Bufco is the alter ego of

Corbett and that the two should be treated as a single employer within the meaning of the Act, we will not waste ink on a boring recitation of Corbett's sophomoric attempt to use a corporate shell to avoid contractual liability and shall summarily enforce the Board's finding. *See Justak Brothers & Co. v. NLRB,* 664 F.2d 1074, 1076 (7th Cir.1981).

**3.** Under the conversion doctrine, by a showing of majority support by a signatory union, an otherwise revocable § 8(f) pre-hire agreement

not only established the union as the exclusive bargaining representative of the employees during the term of the pre-hire agreement, but also imposed a continuing obligation to bargain between the two parties after the agreement's expiration. Accordingly, the ALJ found the Company to be in violation of § 8(a)(1) and (5) for repudiating the pre-hire agreement and otherwise failing to recognize the Union as the exclusive bargaining representative of those employees described in the pre-hire agreements. After the ALJ's decision, the Board abandoned the conversion and merger doctrines relied on by the ALJ. Instead, the Board held simply that a signatory to a § 8(f) pre-hire agreement is bound to its terms for the duration of the agreement unless the employees covered by the agreement reject the signatory union in a Board conducted election. *John Deklewa & Sons,* 282 NLRB No. 184, 124 LRRM 1185 (1987), *enf. sub nom. Intern. Ass'n of Bridge, etc., Local 3 v. NLRB,* 843 F.2d 770 (3rd Cir.1988).

Accordingly, in reviewing the ALJ's decision, the Board applied its recent *Deklewa* rule retroactively and held that the Company had violated the Act by repudiating its § 8(f) agreements with the Union. The Board accordingly entered a cease and desist order and a make whole remedy.

On petition for enforcement of this order, we address the following three issues: (1) Whether the Board's new *Deklewa* rule contradicts Supreme Court or this Circuit's precedent; (2) Whether this Circuit accepts the Board's *Deklewa* rule as a reasonable construction of the Act; and (3) Whether it

is manifestly unjust to apply the *Deklewa* rule retroactively.

## II.

▮ Before determining whether the Board's *Deklewa,* rule is sufficiently well-reasoned to enjoy our acceptance, we must address the respondent's assertion that even if *Deklewa* is a reasonable interpretation of § 8(f), indeed even if the "correct" interpretation, we are precluded from accepting it because it "is contrary to decisions of the Supreme Court and this Court." Specifically, the Company contends that under the Supreme Court's decisions in *N.L.R.B. v. Ironworkers Local 103 (Higdon Construction Co.),* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978) and *Jeff McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), and our decisions in *Intern. Ass'n of Bridge, Structural v. Higdon Const.,* 739 F.2d 280 (7th Cir.1984) and *Gould v. Lambert Excavating, Inc.,* 870 F.2d 1214 (7th Cir.1989) the Supreme Court and this court adopted the Board's *R.J. Smith* rule which, contrary to *Deklewa,* held that § 8(f) agreements are voidable until the union reaches majority support.[4] Therefore, the Company concludes, the Board and this court are constrained by *stare decisis* from promulgating a rule contrary to *R.J. Smith.*

The company's argument, even if theoretically tenable, is not supported by a reading of the relevant case law. After a careful reading of *McNeff* and *Higdon* we believe that in both cases the Court was "merely reviewing the Board's [*R.J. Smith*] interpretation of § 8(f) and not substituting its own judgment or prescribing its own interpretation of the statute."[5]

would "convert" into a full-fledged collective bargaining agreement, thereby giving the union all the privileges accorded to those unions with majority support under § 9(a) of the Act. *See John Deklewa & Sons,* 282 NLRB No. 184 (1987). Under the merger doctrine,

when a single employer joins a multi-employer association and adopts the association's collective bargaining agreement, the single employer's unit "merges" into the multi-employer unit when the requisite inquiry into majority support occurs in that multi-employer unit." The employer and union could "merge" employees into a single multi-employer unit.

*John Deklewa & Sons,* 282 NLRB at ——, 124 LRRM at 1189 & n. 14. *See also Amado Electric,* 238 NLRB 37, 99 LRRM 1453 (1978).

4. *R.J. Smith Construction Co.,* 191 NLRB 693 (1971), *enf. denied sub nom. Local No. 150, International Union of Operating Engineers v. NLRB,* 480 F.2d 1186 (D.C.Cir.1973).

5. Though our Circuit has previously applied the Board's former *R.J. Smith* conversion rule, nothing in our opinions indicates that its invocation constituted more than our agreement that it was an acceptable reading of the Act. In *Intern. Ass'n of Bridge, Structural v. Higdon*

*Intern Ass'n of Bridge, etc., Local 3 v. NLRB*, 843 F.2d 770, 776 (3rd Cir.1988). *Accord, N.L.R.B. v. W.L. Miller, Co.,* 871 F.2d 745, 748, (8th Cir.1989); *Mesa Verde Const. v. N. Cal. D. Council of Laborers,* 861 F.2d 1124, 1129 (9th Cir.1988). Indeed, specific language in *Higdon* demands this conclusion.

> We have concluded that the Board's construction of the Act, *although perhaps not the only tenable one, is an acceptable reading* of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections.

*Higdon,* 434 U.S. at 341, 98 S.Ct. at 656 (emphasis added).

*McNeff* further supports this position. Though not explicitly disclaiming independent construction of § 8(f) as was done in *Higdon,* the *McNeff* Court "relies very heavily upon *Higdon* which did make it clear that the Court was doing no more than holding that the Board's reading of the act was reasonable." *Intern. Ass'n of Bridge, Etc. Local 3 v. N.L.R.B,* 843 F.2d 770, 776 (3rd Cir.1988). Accordingly, since we agree with the Third, Eighth, and Ninth Circuits that the Supreme Court never independently construed § 8(f), but merely accepted the *R.J. Smith* repudiation doctrine as a reasonable construction of § 8(f), we conclude that no case precedent precludes the Board from departing from its prior interpretation of the Act and fashioning a new rule which it believes will better serve the interests of labor and management.

### III.

Having determined that the Board has not been precluded by Supreme Court or Circuit precedent from reversing its prior policy, we must enforce the Board's *Deklewa* rule if we deem it to be based upon a reasonably defensible construction of the

Act. *Higdon,* 434 U.S. at 351, 98 S.Ct. at 660–61; *Accord, NLRB v. Action Automotive, Inc.,* 469 U.S. 490, 496, 105 S.Ct. 984, 988, 83 L.Ed.2d 986 (1985). *See also, Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As we recently stated in *Sheet Metal Workers Local 20 v. Baylor Heating,* 877 F.2d 547, 554 (7th Cir.1989),

> we think that the Board, in *Deklewa,* aptly traced the historical development of the laws governing pre-hire agreements and identified some of the underlying policy considerations that are pertinent here—labor stability and employee free choice.

Accordingly, we need not re-articulate the numerous reasons favoring the rule's acceptance. In addition, we join the Eighth Circuit in its belief "that the Third Circuit's reasoning concerning the propriety of the *Deklewa* rule is correct, and we decline the invitation to examine it anew." *N.L.R.B. v. W.L. Miller Co.,* 871 F.2d 745, 748 (8th Cir.1989). Thus, for the reasons articulated by the Third Circuit in *Intern. Ass'n of Bridge etc., Local 3 v. NLRB,* 843 F.2d 770 (3rd Cir.1988) we accept the Board's *Deklewa* rule as reasonable and consistent with the Act.

### IV.

▮ Since the Board decided to apply its *Deklewa* rule "to all pending cases in whatever stage" [6] the sole remaining issue for our determination is whether the rule should be retroactively applied to this case. "Generally, a decision which changes existing law or policy is given retroactive effect unless retroactive application would cause 'manifest injustice.' " *NLRB v. Affiliated Midwest Hosp. Inc.,* 789 F.2d 524 (7th Cir. 1986) (quoting *NLRB v. Lyon & Ryan Ford, Inc.,* 647 F.2d 745, 757 (7th Cir.1981))

*Const.,* 739 F.2d 280 (7th Cir.1984) when stating the *R.J. Smith* rule we simply relied upon *Higdon* and *McNeff* and cited them as the prevailing law. In *Gould v. Lambert Excavating, Inc.,* 870 F.2d 1214 (7th Cir.1989), a post-*Deklewa* case, we applied the Board's pre-*Deklewa* rules because the parties had not argued *Deklewa* in the

underlying District Court proceeding. However, the Court clearly indicated that its decision did not constitute a rejection of the *Deklewa* test. *Gould* at 1220.

6. *Deklewa,* 282 NLRB at ——, 124 LRRM at 1198.

(citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)). In determining whether manifest injustice is caused by the retroactive application of a Board rule we consider the following: "the reliance of the parties on preexisting law; the effect of retroactivity on accomplishing the purpose of the law; and any injustice arising from retroactive application." *NLRB v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 499 (7th Cir.1984). Although the Ninth Circuit has declined to apply *Deklewa* retroactively,[7] we join the Third and Eighth Circuit in their acceptance of the Board's decision to retroactively apply the *Deklewa* rule to cases such as the one before us.[8]

Applying the factors articulated in *Chicago Marine Containers*, we are convinced that the Company suffered no "manifest injustice" from the retroactive application of the *Deklewa* rule. While we agree that the Board's *Deklewa* rule was an abrupt departure from the Board's former approach, in light of the Board's merger and conversion doctrines which could be applied at any time to abrogate *R.J. Smith's* unilateral repudiation rule, we do not believe the Company could have reasonably believed that it could repudiate its § 8(f) agreement with impunity. Indeed, since the ALJ found that through the merger and conversion doctrines the Union enjoyed § 9(a) majority status, the Company benefits from the retroactive application of a rule which relieves them of a continuing obligation to bargain which they may otherwise have had.[9] Moreover, in light of the thinly veiled attempt to funnel work from the pre-hire signatory Corbett to Bufco, it is all but too obvious that the Company anticipated difficulties in repudiating the agreement. Finally, several benefits exist for retroactive application of the new rule. Chief among these is the avoidance of the administrative inefficiencies inherent in the application of old and new rules. Thus, in this case, we find no manifest injustice to the retroactive application of the *Deklewa* rule.

## V.

Since we hold that the promulgation of the Board's *Deklewa* rule is not precluded by Supreme Court or Circuit case law and we find that it is a rational construction of § 8(f) whose retroactive application is not manifestly unjust, we grant the Board's petition for enforcement of its order.

---

7. *Mesa Verde Const. v. N. Cal. D. Council of Laborers*, 885 F.2d 594 (9th Cir.1989).

8. We express no opinion on the Eighth Circuit's finding of manifest injustice with respect to interest assessed by the Board. *See NLRB v. W.L. Miller Co.*, 871 F.2d 745, 749–50 (8th Cir. 1989).

9. This court need not and does not express an opinion on the correctness of the ALJ's decision and order applying former Board rules.

