**OAKWOOD HOSPITAL, Petitioner Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross–Petitioner.**

**Nos. 91–6414, 92–5055.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1992.

Decided Jan. 6, 1993.

Lauren A. Rousseau–Rohl, Paul H. Townsend, Jr. (argued and briefed), Dykema & Gossett, Detroit, MI, for Oakwood Hosp.

Aileen A. Armstrong, Dep. Asso. Gen. Counsel, Howard E. Perlstein (briefed), Margaret G. Bezou (argued and briefed) N.L.R.B., Office of the General Counsel, Washington, DC, Bernard Gottfried, Regional Director, Ellen Rosenthal, N.L.R.B., Region Seven, Detroit, MI, for N.L.R.B.

Before: KEITH, NELSON and RYAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This case comes to us on a petition for review of a National Labor Relations Board order requiring a hospital to let professional union organizers occupy its cafeteria for the purpose of soliciting non-union hospital workers to sign up with the union. The Board has filed a cross-application for enforcement of its order. Concluding that the hospital was entitled to decide for itself whether its cafeteria could be used for this purpose, we shall grant the petition for review and deny the application for enforcement.

I

The petitioner operates Oakwood Hospital, a 615–bed acute care facility located in Dearborn, Michigan. Oakwood has approximately 3,000 employees, all of whom reside outside the hospital. Some 625 of the employees are in a service and maintenance employees bargaining unit for which the recognized bargaining agent is Local 2568 of the American Federation of State, County and Municipal Employees, AFL–CIO. Another union represents Oakwood's licensed practical nurses. The rest of the employees are not represented by any union.

The hospital's physical plant, which is in a residential neighborhood, consists of a ten-story building with an adjacent four-story wing and a three-story parking garage. There is a cafeteria on the ground floor of the main building. At one time the cafeteria had a capacity of 404 people, but the capacity was reduced substantially as a result of remodeling performed in April and May of 1987. The cafeteria is used primarily by employees, but others are permitted to eat there.

A written anti-solicitation policy published by the hospital prior to the events at issue here was in force throughout the

relevant time period. The policy stated, among other things, that "[i]ndividuals who are not employees of the hospital will not be permitted to enter or remain on hospital property to solicit employees ... without written approval...."

The cafeteria is very crowded at meal-time, and the hospital posted a sign at the entrance to the cafeteria encouraging visitors to use nearby vending machines between the hours of 11 a.m. and 1 p.m. and between 7:15 p.m. and 8:15 p.m. In January of 1988 the hospital began issuing patients an information booklet in which the cafeteria was said to be "closed to visitors" during these hours. Copies of the booklet were placed at the information desk, but they were not distributed to visitors or employees. In practice, visitors who want to eat in the cafeteria during peak hours have never been prohibited from doing so.

To accommodate as many people as possible, the tables in the cafeteria are arranged in rows; there are no private tables. The tables are set so close together that diners walking between them must lift their trays above the heads of people seated beside the aisle.

In January of 1987 the State, County, and Municipal Employees union began a drive to organize Oakwood's 690 registered nurses. Representative Roy Gonzalez, an employee of the international union, was assigned to the campaign. Mr. Gonzalez had no duties with respect to the service and maintenance employees, but he was assisted by an internal organizing committee of Local 2568. Mr. Gonzalez conducted mass mailings to the registered nurses, held organizational meetings at a local banquet hall and motel, and, with the assistance of employees who held office in the union, engaged in solicitation of non-union employees inside the hospital.

From February to June of 1987 Mr. Gonzalez went to the hospital cafeteria every week or two for the purpose of urging non-union employees to support the union. During his visits he wore a button that read "Vote AFSCME." The pattern he followed was to order food, sit down at a table, and talk with employees for three or four hours at a stretch. The hospital did not interfere with Mr. Gonzalez during this period; it may or may not have realized that he was engaging in solicitation.

Mr. Gonzalez began returning to the hospital cafeteria in September of 1987. He stayed there from 11 a.m. to 3:30 p.m. on September 21, and from 11 a.m. to 1:30 p.m. and 5 p.m. to 9 p.m. on September 23.

Mr. Gonzalez was in the cafeteria at about midnight on September 27, 1987, when two supervisors asked him what he was doing there. He replied that he represented the union and that he was organizing the registered nurses. The supervisors asked him to leave. Mr. Gonzalez refused, asserting that he had a right to stay where he was. The hospital's head of security was called, and he too asked him to leave; again Gonzalez refused. He was not ejected, and he stayed in the cafeteria until about 4:30 a.m.

A similar episode occurred on October 1, with Mr. Gonzalez again insisting that he had a right to engage in solicitation in the cafeteria. He finally left after the Dearborn Police were called. The police were called a second time on October 5, but they refused to arrest Mr. Gonzalez or direct him to leave.

On October 7, 1987, the hospital filed a trespass complaint against Mr. Gonzalez in a Michigan court. About three months after this filing, the General Counsel of the National Labor Relations Board issued an unfair labor practice complaint against the hospital. Concluding, after a short hearing, that the matter was one for the federal authorities to deal with, the Michigan court then dismissed the hospital's trespass complaint without prejudice.

Mr. Gonzalez continued to use the cafeteria for his solicitation efforts between March and June of 1988. During this period an assistant vice president of the hospital told staff personnel to "keep track of [Gonzalez'] whereabouts and who he was talking to and where in the cafeteria, and if he was in any other area of the [hospital]." As directed, Personnel Supervisor Tina Braid and others sat close to Gonzalez when he was in the cafeteria and followed

him when he left. On one such occasion Ms. Braid wrote down the names of employees with whom Mr. Gonzalez spoke.

The unfair labor practice charge came on for hearing, in due course, before an administrative law judge. The ALJ decided that the hospital had violated the National Labor Relations Act in ejecting Mr. Gonzalez from the cafeteria and in keeping him under surveillance, but not in maintaining the state court trespass action.

The ALJ's decision was affirmed by the National Labor Relations Board in all respects but one: the Board held that the trespass action violated the Act as well. The Board's decision was followed by the filing of the hospital's petition for review and the Board's cross application for enforcement of its order.

## II

Section 7 of the National Labor Relations Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing...." 29 U.S.C. § 157. Section 8(a)(1) protects this right by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [S]ection 7 [of the Act.]" 29 U.S.C. § 158(a)(1).

■ The right of self-organization "depends in some measure on the ability of employees to learn the advantages of self-organization from others." *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 113, 76 S.Ct. 679, 684–85, 100 L.Ed. 975 (1956). The guarantee contained in Section 7 therefore "includes both the right of union officials to discuss organization with employees and the right of employees to discuss organization among themselves." *Central Hardware Co. v. NLRB*, 407 U.S. 539, 542, 92 S.Ct. 2238, 2241, 33 L.Ed.2d 122 (1972).

■ A right to communicate with the employer's work force does not necessarily imply the existence of a right to trespass on the employer's property. In a line of decisions that culminates in *Lechmere, Inc. v. NLRB*, — U.S. —, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), the Supreme Court has drawn a very clear line beyond which the organizational rights of the union may not take precedence over the property rights of the employer.

### A.

■ In *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), the Court held as a matter of law that an employer cannot normally be required to allow distribution of union literature by non-employees on the employer's property.[1] The Court recognized an exception to the general rule, however, where "the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them." *Id.* at 113, 76 S.Ct. at 685. In that very limited situation, the employers' property rights may be "required to yield to the extent needed to permit communication of information on the right to organize". *Id.* at 112, 76 S.Ct. at 684.

*Babcock* was reaffirmed in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 205, 98 S.Ct. 1745, 1762, 56 L.Ed.2d 209 (1978). The *Sears* Court said that the union has the burden of showing either that it has no other reasonable means of communicating its organizational message to the employees or that the employer's rules on access discriminate against union solicitation. Because this burden is a "heavy one," trespassory organizational activity is permitted only "rarely." *Sears*, 436 U.S. at 205, 98 S.Ct. at 1762.

In two cases involving Montgomery Ward & Co., the Courts of Appeals for the Seventh and Sixth Circuits subsequently held that union solicitation in an employer's restaurant was permissible where the solic-

---

1. *Babcock* applies not only to the distribution of literature, but also to solicitation activities in which no literature is used. See *Central Hard-* *ware Co. v. NLRB*, 407 U.S. 539, 545, 92 S.Ct. 2238, 2242, 33 L.Ed.2d 122 (1972).

itation was conducted as an incident to the normal use of such facilities. *Montgomery Ward & Co. v. NLRB,* 692 F.2d 1115 (7th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983); *Montgomery Ward & Co. v. NLRB,* 728 F.2d 389 (6th Cir.1984). The Courts of Appeals for the Eighth and Fourth Circuits, however, have read *Babcock* as requiring the opposite result. *Baptist Medical System v. NLRB,* 876 F.2d 661 (8th Cir.1989); *NLRB v. Southern Maryland Hosp. Center,* 916 F.2d 932 (4th Cir.1990).

In *Baptist Medical System* the NLRB had concluded, just as it did in the case at bar, that a hospital could not prevent non-employee union organizers from using the hospital's public restaurant to solicit support for the union as long as this activity was not disruptive of the hospital's business. See 876 F.2d at 663. Upon review, the court of appeals rejected the Board's conclusion. *Babcock* did not become inapplicable, the court held, merely because the union wanted to use an area that the employer had designated for public use. "By inviting the public to use an area of its property," said the court, "the employer does not surrender its right to control the uses to which that area is put." *Id.* at 664.

In *Southern Maryland Hospital Center,* similarly, the court held that in the absence of any evidence suggesting discriminatory enforcement of the hospital's no-solicitation policy, and given the fact that the union had other means of communicating with hospital employees, the hospital could prohibit solicitation in its cafeteria.

The logic of *Baptist Medical* and *Southern Maryland Hospital Center* appears unassailable in light of the Supreme Court's recent decision in *Lechmere, Inc. v. NLRB,* — U.S. at —, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). *Lechmere* arose from solicitation activities conducted by non-employee union organizers in the parking lot of petitioner Lechmere's shopping center. Balancing the interests of the employees against those of the employer, the NLRB concluded that the organizers' trespassing was not unreasonable; Lechmere was therefore ordered to stop barring the orga-

nizers from the parking lot. When the case reached the Supreme Court, the Court denied enforcement of the Board's order. The Court declared that the Board was not permitted to engage in this type of "balancing;" that the National Labor Relations Act does not protect "reasonable" trespasses by nonemployees; and that under *Babcock,* nonemployee union organizers are only protected "in the rare case where 'the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels.'" *Lechmere,* — U.S. at —, 112 S.Ct. at 848, quoting *Babcock,* 351 U.S. at 112, 76 S.Ct. at 684. The Court went on to stress that the "inaccessibility" exception to the rule in *Babcock* is a "narrow" one that applies only where the locations of the employer's facility and the employees' living quarters place the employees beyond the reach of reasonable efforts to communicate with them. *Lechmere,* — U.S. at —, 112 S.Ct. at 849.

Classic examples of situations where the inaccessibility exception applies include logging camps, mining camps, and mountain resort hotels. *Id.* — U.S. at —, 112 S.Ct. at 849 (citing cases). Typically, of course, employees live on the employer's property in these situations. In *Lechmere,* however—as in the case at bar—the employees did not reside on the employer's property. "Because the employees do not reside on Lechmere's property," said the Court, "they are presumptively not 'beyond the reach' ... of the union's message." — U.S. at —, 112 S.Ct. at 849 (citation omitted).

■ The presumption that the hospitals' employees were not beyond the reach of the union's message has not been rebutted in the case at bar. On the contrary, the record shows that the union was able to communicate its message through mass mailings and through meetings held in a local banquet hall. This is clearly not one of the "rare" cases where we would be justified in applying the "narrow" inaccessibility exception to *Babcock's* rule.

Neither is this a case in which the proponents of the cease and desist order have

sustained their burden of showing that the employer's anti-solicitation rule discriminates against union solicitation. (*Lechmere* reaffirms that it is not the employer that has the burden of proof on this issue. —— U.S. at ——, 112 S.Ct. at 847, quoting *Sears*, 436 U.S. at 205, 98 S.Ct. at 1761–62.) On its face, Oakwood Hospital's anti-solicitation rule applies to all nonemployees—and there has been no showing here that nonemployees other than union organizers are permitted to solicit in the cafeteria. *Lechmere* thus leaves no room for doubt that the hospital was entitled to prohibit Mr. Gonzalez from using the hospital's cafeteria as a place to conduct his organizing activities. If the owner of an outdoor parking lot can bar nonemployee union organizers, it follows *a fortiori* that the owner of an indoor cafeteria can do so. To the extent that our *Montgomery Ward* decision may be inconsistent with this conclusion, we do not believe that it has survived *Lechmere*.

### B.

■ The Board contends that Oakwood violated Section 8(a)(1) of the Act by engaging in surveillance of Mr. Gonzalez while he was in the cafeteria. We disagree. In the situation presented here, unlike that presented in cases such as *NLRB v. Garon*, 738 F.2d 140, 143 (6th Cir.1984), the solicitation conducted by the union organizer in the hospital cafeteria made him a trespasser. Because the hospital had the right to exclude the organizer from the cafeteria altogether, it possessed the lesser right to observe his activities while he was there. See *Southern Maryland Hospital Center*, where the Court of Appeals for the Fourth Circuit expressed itself thus:

> "Having concluded that the employer can completely prohibit solicitation in the cafeteria, we must also hold that the same employer has the lesser right to conduct surveillance of union activities.... [T]he degree of surveillance, no matter how 'out of the ordinary,' is irrelevant." 916 F.2d at 939.

In the case before us the administrative law judge determined that Mr. Gonzalez was merely making dining room conversation and was not engaged in "public" union activity. This factual finding, although entitled to deference, is not supported by substantial evidence. The hospital cafeteria is a busy, crowded facility with no private tables. Mr. Gonzalez could have had no legitimate expectation that his conversations—which extended far beyond normal dining hours—were private.

### C.

Finally, giving retroactive application to *Makro, Inc. and Renaissance Properties Co., d/b/a Loehmann's Plaza*, 305 N.L.R.B. No. 81, 138 LRRM 1452 (1991)—a case decided the same day as the instant case—the Board held that Oakwood committed an unfair labor practice by maintaining the state court trespass action after the Board's General Counsel issued the unfair labor practice charge.

■ The Board's judgments on retroactivity should normally be upheld unless manifest injustice can be shown. See *Hickman Harbor Serv. v. NLRB*, 739 F.2d 214, 218 (6th Cir.1984). In considering whether manifest injustice is caused by the retroactive application of a Board rule, a court considers the reliance of the parties on preexisting law, the effect of retroactivity on accomplishing the purpose of the law, and any injustice arising from retroactive application. See *NLRB v. Bufco Corp.*, 899 F.2d 608, 612 (7th Cir.1990).

■ Even under *Loehmann's Plaza*, it is clear that there was nothing improper in the hospital's filing of the state court trespass complaint. Because the Board's General Counsel had not yet issued his unfair labor practice charge, the jurisdiction of the state court had not been preempted. Preemption may have occurred upon the issuance of the unfair labor practice charge, but all that happened thereafter in the state court proceedings was a brief hearing in which the judge, having been told what had happened, decided to dismiss the case on preemption grounds. It is by no means clear that the hospital was aware of any duty to dismiss the lawsuit prior to the hearing, *Loehmann's Plaza* not yet having been decided; in any event, no one suffered any significant prejudice by reason of the hospital's failure to do so. To apply *Loehmann's Plaza* retroactively in

this situation would be manifestly unjust and would accomplish no useful purpose.

The petition for review is GRANTED, and the cross-application for enforcement is DENIED.

KEITH, Circuit Judge, dissenting.

Because I disagree with the majority's view of the facts and its reliance upon *Lechmere, Inc. v. NLRB*, — U.S. —, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), I must respectfully dissent.

In its opinion, the majority concludes that the hospital's anti-solicitation rule equally applies to all nonemployees, and therefore, Mr. Gonzalez was not discriminated against because of his efforts to organize employees to form a union. This analysis, however, does not comport with the following facts.

From February to June 1987, Mr. Gonzalez went to the hospital cafeteria every week or two to speak with hospital employees. During this time, the hospital knew that Mr. Gonzalez was present in the cafeteria and that he talked to officers of Local 2568. The hospital, however, did not know that he also was attempting to organize the registered nurses. The hospital did not enforce its anti-solicitation rule against Mr. Gonzalez during this time. In the fall of 1987, Mr. Gonzalez informed the hospital administration that he was organizing the registered nurses. It was at this point that the hospital began monitoring his activities, and ultimately filed a trespass complaint against him. As ALJ Marvin Roth noted,

> [T]he Company candidly admits the reason for its actions: "Prior to September 1987, Oakwood had no knowledge of the purpose of Gonzalez' visits. When Oakwood finally learned the purpose of Gonzalez' visits on September 24, 1987, Jenkins personally confronted Gonzalez, and asked him to leave the cafeteria." (See also Br. 28). The Company's course of conduct was consistent with this admission. Throughout early 1987 the Company knew of and tolerated Gonzalez' presence on the possibility that he may have been there in connection with the service and maintenance unit. However as soon as Jenkins learned that Gonzalez was talking to nonunit employees, he immediately took steps to expel him. *In sum, the Company sought to deny Gonzalez access to the cafeteria because of the subject matter of his conversations with employees at the dinner table, i.e., organizational activity.*

(ALJ opinion, p. 8) (emphasis added).

Although there was an anti-solicitation rule in a manual that was distributed to department heads, there is no evidence that this rule was ever applied before. Furthermore, this rule was not posted anywhere in the hospital. The hospital did not consider Mr. Gonzalez a trespasser until it learned that he was discussing the union with unorganized employees. As the ALJ stated in his opinion,

> [T]he Board has held that a hospital may not discriminatorily exclude union organizers from its cafeteria, where the cafeteria is generally open to visitors although primarily intended for and used by employees. *Southern Maryland Hospital Center*, 276 NLRB 1349, n. 2 (1985).

(ALJ opinion, p. 10). Clearly, the selective enforcement of the rule indicates that the hospital engaged in discrimination against union solicitation. Therefore, Mr. Gonzalez was not trespassing.

The majority relies upon *Baptist Medical Systems v. NLRB*, 876 F.2d 661 (8th Cir. 1989), and *NLRB v. Southern Maryland Hospital Center*, 916 F.2d 932 (4th Cir. 1990) for its conclusion that it was lawful to exclude Mr. Gonzalez from the cafeteria. These cases, however, are factually distinguishable from the instant case. First, in neither *Baptist Medical Systems* or *Southern Maryland Hospital Center*, did the hospitals allow union organizers to use their cafeterias as long as the organizers did not discuss union membership to unorganized employees. Second, in both cases, the hospitals had well-publicized anti-solicitation rules.

It follows, therefore, that the majority's reliance upon *Lechmere, Inc. v. NLRB*, — U.S. —, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), is also flawed. The *Lechmere* Court held that union organizers would be allowed to trespass upon employer's prop-

erty only in instances where the employees cannot effectively be reached through other forms of communication. Mr. Gonzalez, however, was not a trespasser. Any determination as to whether, as a trespasser, he had alternative means of communicating with employees is unnecessary. Because the *Lechmere* Court did not address non-trespassory activity, the majority's reliance upon its reasoning is misplaced.

Because Mr. Gonzalez was not a trespasser, the hospital's surveillance of him violated Section 8(a)(1) of the National Labor Relations Act. The majority states that because the hospital had the right to exclude Mr. Gonzalez from the cafeteria, it therefore had the right to observe him while he was there. However, this reasoning fails because Mr. Gonzalez was not trespassing in the cafeteria.

There is no evidence that the anti-solicitation rule was applied in any other context but that of union organizing efforts. Therefore, I would deny the petition for review and grant the NLRB's application for enforcement of its order, allowing non-employee union members to organize registered nurses in the hospital cafeteria.